Filed 8/3/21  In re R.S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re R.S. et al., Persons Coming Under the Juvenile Court Law. | B310089 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP03075A-B) |
| Plaintiff and Respondent, | |
| v. | |
| E.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Juvenile Court Referee. Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother E.S. appeals the juvenile court's dispositional order removing now eight-year-old R.S. and six-year-old K.S. from her custody due to a history of "violent altercations" with father, D.S. (who is not a party to this appeal). Mother contends no substantial evidence supports the finding that the children were in substantial danger, or that there were no reasonable means to protect them other than removal. We affirm.

## BACKGROUND

R.S. and K.S. are former dependents of the juvenile court. This family had an open case from May 2016 until February 2018, with sustained allegations based on father's inappropriate discipline of K.S., father's domestic violence against mother, and father's marijuana and alcohol use. Jurisdiction was terminated with a custody order, granting mother full physical custody, and joint legal custody with father. Father was granted monitored visitation, and mother was given discretion to liberalize his visits.

After jurisdiction was terminated, the family continued to have problems. Father filed multiple requests for restraining orders against mother in family court. However, no permanent restraining orders were issued. The Los Angeles County Department of Children and Family Services (Department) also received additional referrals, including a referral that mother's friend was arrested for driving under the influence, with mother and the children in the car. The children were not secured in safety seats, and there was a strong odor of marijuana in the car. Mother's home was unkept, and mother tested positive for marijuana. The referral was closed as inconclusive.

The Department received a new referral for the family in April 2020 (the referral that resulted in this case). The reporting party alleged that mother, and the children, went to father's

2

home, where mother assaulted father, scratching his arms and face. According to father, mother had kicked in his door, walked into his apartment, and began punching him in front of the children. Mother left before police arrived. Father sought and was granted a temporary restraining order that same day.

Father admitted he had a history of domestic violence with mother, and characterized their relationship as "toxic and unhealthy." Father appeared remorseful about his past behavior. He took responsibility for his conduct in the past, and expressed a desire to complete his domestic violence program, which had been interrupted by the COVID-19 pandemic. He had completed an anger management program, and intended to complete parenting classes as well. Father had not seen the children in months because mother was not allowing visitation. He was worried that mother was unstable, and wanted custody of the children to keep them out of foster care.

Father was living with his girlfriend, M.X., and their six-month-old daughter, L.X. M.X. was outside during the incident; but L.X. was with her father when mother assaulted him.

Mother provided a different account of the incident. That day, she and the children were picnicking at Echo Park. The children pointed out that father's girlfriend M.X. was at the park. Mother tried to approach M.X., but M.X. ignored her. As mother walked to her car, father approached her, holding a baby in his arms. He "dropped mother to the ground" and "placed his foot [on her] throat." Mother threw her phone and keys to the children, told them to run, and told R.S. to call police.

Mother was able to get up and run away. She had a bruised hand and face, but did not make a police report or seek medical attention. Mother called her boyfriend who told mother

he would "handle the situation." She drove around with the children and asked them to point out where father lived so she could tell her boyfriend. Mother denied going to father's house, breaking in, or assaulting him.

Mother denied using drugs, but confirmed that she worked at a marijuana dispensary, and had used marijuana in the past. Mother had previous arrests for driving on a suspended license, and for intent to sell narcotics. She was working on having her license reinstated.

When the social worker introduced herself to K.S., he volunteered that mother and father had argued at the park. It appeared he was being coached, as the social worker had not asked him about the incident. He would look down or at mother when answering questions, and appeared nervous. He later told the social worker that mother asked him not to say anything to the Department. He reported that mother is mad at father for starting a new family, and that mother fought with father in the "hallway," but would not answer whether the incident occurred at father's house. He admitted that father had hit him before, but that father's girlfriend had never hurt him.

R.S. reported that mother and father fought at the park. When asked if she saw father hit mother, she responded "yes." However, she could not answer where mother was hit, or provide any additional details about the incident, and refused to discuss allegations that mother hit father. R.S. told the social worker mother was "mad at daddy['s] new baby." She confirmed that mother told her not to say anything to the social worker, and it appeared she had been coached.

Both children reported it had been a very long time since they visited father.

4

Paternal relatives confirmed that father told them about the referral incident. The facts were consistent with what father reported to the Department.

Paternal grandmother acknowledged that mother and father had a history of domestic violence, but characterized the fights as mutual, and that both parents were aggressors. According to paternal grandmother, mother made false reports of domestic violence against father.

Paternal aunt reported that mother was very jealous of father's new girlfriend. She was aggressive and her bad behaviors were escalating. Mother has poor judgment, and exposes the children to people who are under the influence.

Paternal and maternal relatives reported that mother has an explosive temper.

A tenant at father's building, who wished to remain anonymous because of fear of retaliation by mother, confirmed that mother was the aggressor when she went to father's apartment, and that she had done this before. The tenant believed mother to be "very aggressive" and "dangerous." Police call logs for father's apartment showed that police had been called three times about mother threatening father and his girlfriend. The police report for the referral incident confirmed that father had visible injuries from the attack.

Father's on demand drug test was positive for marijuana. Mother was unable to submit for drug testing, after she was asked to leave the testing facility for making verbal threats against testing facility staff in front of the children.

When the Department discussed the findings of the investigation with mother, to assess mother's willingness to cooperate so that risk to the children could be mitigated, mother

continued to deny the referral allegations. She became "upset and irate" and told the social worker, "F--- you . . . stupid b----." After the social worker terminated the call, mother texted that "she refuses to participate in services" and would not allow the social worker to have access to her home or the children.

Mother called another social worker to discuss the case. That social worker explained the Department was interested in providing family maintenance services to mother, and allowing the children to remain in her care. Mother began yelling and became belligerent. Mother ended the conversation saying, "take the f------ kids."

The Department obtained a removal warrant and removed the children from mother in June 2020. When the social worker dropped them off at father's house, the children appeared very happy to see him. The Department also filed a petition with allegations that mother and father have a history of engaging in violent altercations in front of the children, and that mother has a history of engaging in violent behavior.

When the Department followed up to see how the children were doing with father, R.S. reported father and his girlfriend were taking good care of her, and she enjoyed living with them. She told the social worker she did not want to visit mother because she has her own bed at father's house. She preferred to live with father and feels more comfortable with him. K.S. also did not want to visit with mother because she sometimes yells at him. He was happy living with father. Both children recalled incidents of mother throwing things at father, but denied knowledge of other domestic violence incidents.

At the June 2020 detention hearing, the court allowed the children to remain with father, and ordered monitored visitation for mother.

The Department's September 2020 Jurisdiction/Disposition report noted that mother made a belated police report of the incident at the park, telling police father pushed her and punched her in the face, and held her down with his foot.

R.S. denied seeing father at the park. K.S. reported that father told him to be truthful. He admitted that mother was angry and went to father's house, and that mother yelled at father.

Mother continued to deny that she went to father's house and assaulted him. Father denied assaulting mother at the park.

Mother showed the social worker photos from the date of the referral incident, showing her and the children at the park that day. She also shared screenshots of texts sent to paternal grandmother, with photos purporting to show bruises on her face and hand. Mother's best friend confirmed that mother told her about the park incident.

Mother started attending parenting classes. However, she was a no show for drug tests in July and August 2020, and she tested positive for marijuana in August 2020. Mother said she was unable to test because she was feeling overwhelmed and depressed from all of her interactions with the Department, and would forget to test. She also had a hard time understanding what the Department was asking her to do. Mother threatened to "com[e] after every single agent and every single judge" and sue if anything happened to her children in father's care.

Father was participating in individual counseling. He missed one drug test, but his other test was negative. He was

7

concerned about mother's visitation with the children, because the children reported that mother asked them inappropriate questions about the case.

Mother's visitation was not going well. She told the Department she did not want to visit the children because she was feeling "harassed" by the Department. A visit had to be terminated after mother asked inappropriate questions of R.S. When the social worker tried to redirect mother, she became upset and stormed off.

The combined adjudication and disposition hearing was held on November 17, 2020. Mother testified father drank and was violent when they were in a relationship, and that he hit her many times. She denied ever being the aggressor. She testified that father hit her at the park on the day of the referral incident, and denied assaulting him at his apartment. Pictures of her injuries were admitted into evidence.

The court took jurisdiction over the family, removed the children from mother, and ordered them to remain with father. Mother sought rehearing, arguing that father's version of events was not credible. The request was denied. Mother timely appealed.

While this appeal was pending, the court terminated jurisdiction with a custody order, giving sole physical custody to father, and joint legal custody to mother and father.

## DISCUSSION

Mother does not challenge the juvenile court's jurisdictional order, and there is no dispute exposing children to domestic violence is a sufficient basis for the juvenile court to assert jurisdiction. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599–601.)

8

Mother contends there was insufficient evidence the children were at substantial risk of harm if they were returned to her, reasoning that the record does not support a finding that the domestic violence would continue if the children were placed with mother. We are not persuaded.

Removal is proper if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code, § 361, subd. (c)(1).) We review the dispositional order for substantial evidence, keeping in mind the trial court had to find clear and convincing evidence supporting removal. (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.) We must decide " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' " (*Ibid.*)

The evidence here supports removal. The sustained jurisdictional findings are prima facie evidence the children were unsafe with mother. (See *In re T.V., supra,* 217 Cal.App.4th at p. 135 ["The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home."].) Also, there was overwhelming evidence mother was hostile and aggressive, and that she attacked father in front of the children, and threatened others in their presence. Father's account of mother's attack against him was corroborated by a neighbor, and his injuries were documented by police. Mother denied the incident, and instead claimed father was the aggressor, when most of the

9

evidence suggested otherwise. Father told the children to be truthful, where mother was coaching the children to withhold information from the Department. She was defiant, aggressive, and uncooperative with the Department. These facts demonstrate a substantial danger to the children if returned to mother's care.

Mother contends there were reasonable means to protect the children other than removal. (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135; see also Welf. & Inst. Code, § 361, subd. (c)(1).) Mother's denial and uncooperative behavior show that there were no other reasonable means to protect the children.

## DISPOSITION

The dispositional orders are affirmed.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


WILEY, J.